

VICTORIA WATSON | SENIOR COUNSEL
T (202) 852-8482 | F (202) 463-6067
VICTORIA.WATSON@LESCHTLAW.COM

December 20, 2024

**FOR PURPOSES OF SETTLEMENT DISCUSSION ONLY**

*VIA FIRST CLASS MAIL*

U.S. District Clerk's Office
262 West Nueva Street, Room 1-400
San Antonio, Texas 78207

    Re: <u>Ashley Bellotte v. Lloyd J. Austin, III et al.</u>

To Whom This May Concern:

    Please find enclosed Plaintiff's Amended Complaint. Please advise any questions.

        Respectfully,

        */s/ Victoria Watson*
        Victoria Watson
        Alan Lescht and Associates, P.C.
        1825 K Street, NW, Suite 750
        Washington, DC 20006
        T (202) 852-8482
        F (202) 463-6067
        victoria.watson@leschtlaw.com



FILED

JAN 0 2 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS

|  |  |
|---|---|
| **Ashley Bellotte,**<br>18 Elm Court<br>Twentynine Palms, CA 92277,<br><br>         Plaintiff,<br><br>  v.<br><br>**Lloyd J. Austin, III,**<br>Secretary, Department of Defense<br>1400 Defense Pentagon<br>Washington, D.C. 20301,<br>        and<br><br>**Bestica, Inc.**<br>3463 Magic Drive, #303<br>San Antonio, TX 78229<br><br>        Defendants. | Case No. 5:24-cv-00876-JKP<br><br><br><br>JURY TRIAL DEMANDED |

### AMENDED COMPLAINT

Plaintiff Ashley Bellotte by and through counsel, files this Amended Complaint against Lloyd J. Austin, III, in his official capacity as Secretary of the Department of Defense, Defense Health Agency ("Agency") and Bestica, Inc. ("Bestica") (collectively, "Defendants") as follows:

### NATURE OF THE CASE

1.    Ashley Bellotte is severely allergic to artificial scents, including those found in aerosols, chemicals, colognes, perfumes, scented lotions, diffusers, etc.

2.    Exposure to these non-naturally occurring allergens directly impacts Ms. Bellotte's ability to breathe, causes irritation and swelling of her tongue and face, and can cause her to go into anaphylactic shock.

1

3.  Bestica hired Ms. Bellotte to work as a contract Preventionist/Exercise Physiologist for the Department of Defense, Defense Health Agency (hereinafter, "Agency"), first at the Diabetes Center of Excellence ("DCOE") at Wilford Hall Ambulatory Surgical Center ("WHASC"), and then at the DCOE at Brooke Army Medical Center ("BAMC").

4.  Ms. Bellotte could have performed her essential duties without a reasonable accommodation if the Agency enforced its existing scent-free workplace policy.

5.  Although Ms. Bellotte informed Agency and Bestica leadership about her disability, the Agency refused to enforce the scent-free workplace policy and knowingly allowed employees to violate it.

6.  From August 2021 to March 2024, she repeatedly requested reasonable accommodations and provided supporting medical documentation.

7.  Although Defendants could have accommodated Ms. Bellotte by allowing her to telework, Defendants denied her request for accommodations and failed to provide any effective alternative.

8.  Instead, the Agency placed her in a shared office with 11 other employees who continued to use perfume and scented products, despite knowledge of Ms. Bellotte's allergies.

9.  On a daily basis, Ms. Bellotte suffered from rashes on her arms and face, difficulty breathing and speaking, and swelling of her tongue and eyes due to her exposure to allergens.

10. In November 2023, Ms. Bellotte had to go the emergency room because she had such a severe reaction to her colleagues' scented lotions, sprays, and perfumes.

11. Ms. Bellotte's doctor diagnosed her with a chronic condition that was worsened by repeated and continuous exposure to allergens. She promptly provided documentation to Defendants.

12. After that, the Agency's harassment and intimidation of Ms. Bellotte increased; her

supervisor called her names, including "smart ass," "troublemaker," and "rude," and other employees even mocked her for wearing a mask to try to limit direct exposure.

13. She continued to experience swelling, and difficulty breathing and speaking on a daily or near-daily basis and developed a severe sinus infection that required steroid medication.

14. In February 2024, Ms. Bellotte learned she was pregnant.

15. Now, not only would Defendants' actions continue to severely damage her health, but they would also put her unborn child at risk. Therefore, Ms. Bellotte had no choice but to resign on March 5, 2024.

16. Sadly, Ms. Bellotte lost her baby the week after her forced resignation.

17. Ms. Bellotte brings this action to recover damages against Defendants for unlawful disability and sex discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.* ("Rehabilitation Act"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et. seq.* ("ADA"), and the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.* ("PWFA").

## JURISDICTION AND VENUE

18. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

19. Venue is proper in this judicial district because Defendants are located here and because the unlawful employment practices giving rise to these actions were committed and occurred in this District.

## THE PARTIES

20. Ms. Bellotte is a U.S. citizen who currently resides in California. During the relevant time period, she lived in San Antonio, Texas, and worked at and for the Defendant Lloyd J. Austin,

III, Secretary, Department of Defense on and through a contract between Defendant Austin, Department of Defense, and Defendant Bestica, Inc.

21. Defendant Lloyd J. Austin, III, is the Secretary of the Department of Defense and is named in his official capacity. At all relevant times, Defendant Agency was Ms. Bellotte's employer within the meaning of and subject to the requirements of the Rehabilitation Act and/or is required to comply with the Rehab act as a recipient of federal funding.

22. Bestica, Inc. is a healthcare staffing company that provides solutions in Information Technology and Healthcare sectors within the Department of Defense, Federal and Commercial markets. At all relevant times, Defendant Bestica was Ms. Bellotte's employer or employment agency within the meaning of and subject to the requirements of the ADA and is required to comply with the Rehab act as a recipient of federal funding.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

### *Defense Health Agency*

23. Ms. Bellotte exhausted her administrative remedies with regard to the Defendant Agency pursuant to 29 C.F.R. § 1614.

### *Agency No. DHASAN 23-0871; Appeal No. 2024002513 (First Complaint of Discrimination)*

24. On November 17, 2023, Ms. Bellotte filed her first formal complaint of discrimination alleging that the Agency discriminated against her and subjected her to a hostile work environment on the basis of disability and sex, including:

   a. From December 2021, to present, the Agency, at both Wilford Hall Ambulatory Surgical Center (WHASC) and Brook Army Medical Center (BAMC), failed to provide Complainant an effective reasonable accommodation;

   b. From July 17, 2023, to August 4, 2023, the Agency (BAMC) failed to provide Complainant a computer, desk, or storage space for job-related items;

   c. From July 17, 2023, to present, the Agency required Complainant to attend an 8AM

4

staff meeting in person that negatively impacts her health due to allergens in the air;

d. From July 17, 2023, to present, during the mandatory staff meetings, the Agency required Complainant to sit in a separate room, and, on one occasion, closed the door to the staff meeting so Complainant could not participate;

e. From July 17, 2023, to present, the Agency (BAMC) has failed to provide Complainant with a private office, despite providing other employees with a private office;

f. From July 17, 2023, to mid-August 2023, the Agency failed to provide Complainant an effective space to breastfeed, resulting in her having to stop breastfeeding;

g. On or around September 13, 2023, the Agency told Complainant her accommodation was denied, but failed to provide a written copy of the decision; and

h. On November 6, 2023, Jessica Garcia-Puig, Program Manager, threatened Complainant with disciplinary action if she does not report exactly by 7:30 AM.

25. On December 12, 2023, Ms. Bellotte amended her first complaint of discrimination to include two like and related claims of discrimination and retaliation:

a. On or around November 29, 2023, the Agency directed Complainant to work in Exam Room 5, which is functionally a storage room, with the hospital storing supply carts, an ultrasound machine, loose sharps containers, blood pressure machine, and procedural lamp and an exam table chair;

b. On November 30, 2023, Complainant learned that the Agency filed a complaint making false and/or unjustified allegations against her based on the following:

   i. Complainant's hanging a sign on her office door, which stated something along the lines of "Fragrance Free Zone – Please do not use/spray fragrance/cologne/perfume products in this area," referring to Complainant's office; and

   ii. Complainant's alleged decline in patient encounters and poor work performance.

26. On February 9, 2024, the Agency issued its final decision in Ms. Bellotte's case, dismissing her complaint of discrimination.

27. On March 8, 2024, Ms. Bellotte appealed the Agency's dismissal of her formal complaint to

the Office of Federal Operations.

28. Ms. Bellotte timely files this lawsuit as 180 days have passed since filing her appeal of the Agency's dismissal to the Office of Federal Operations and no decision has been issued.

*Agency No. DHASAN 23-0871 (Second Complaint of Discrimination)*

29. On June 14, 2024, Ms. Bellotte filed her second formal complaint of discrimination, alleging that Defendant discriminated against her on the bases of disability and reprisal by denying her accommodations, subjecting her to a hostile work environment, and, ultimately, constructively discharging her.

30. Ms. Bellotte timely filed this lawsuit within 90 days of receipt of July 9, 2024, the date the Agency issued a decision dismissing her formal complaint for failure to state a claim under 29 C.F.R. § 1614.107(a)(1).

*Bestica, Inc.*

31. Ms. Bellotte exhausted her administrative remedies by filing a complaint with the Equal Employment Opportunity Commission, on May 13, 2024, within 180 days of her March 5, 2024, forced resignation from employment.

32. On November 14, 2024, the Equal Employment Opportunity Commission issued Ms. Bellotte a Notice of Right to Sue in federal or state court within 90 days.

33. This suit is hereby commenced within that 90-day window.

## STATEMENT OF FACTS

### *Employment Background*

34. In July 2021, Bestica, Inc. ("Bestica"), hired Ms. Bellotte to work as a Preventionist/Exercise Physiologist for the Department of Defense, Defense Health Agency at the Diabetes Center of Excellence ("DCOE"), an Air Force Medical Service specialty clinic, pursuant to a

Performance Work Statement ("PWS") contract between Bestica and the Agency.

35. In this role, Ms. Bellotte's main job duties included providing counseling and education to diabetes patients of the Air Force Medical Service, individually and in group settings.

36. Ms. Bellotte could conduct nearly all of her duties using her computer via a virtual meeting platform; she was rarely required to meet with patients or colleagues face-to-face.

37. Bestica administered Ms. Bellotte's salary and benefits.

38. Ms. Bellotte worked exclusively at the Agency's work sites, first at Wilford Hall Ambulatory Surgical Center ("WHASC") (from July 2021 to July 16, 2023) and then at Brook Army Medical Center ("BAMC") (from July 17, 2023 to March 5, 2024).

39. At all times, Defendants required Ms. Bellotte to use Agency equipment to perform her job duties.

40. Per the PWS, the Agency personnel exercised "day-to-day supervision, clinical oversight, and control" over the contract employees, including Ms. Bellotte, that is "comparable to that exercised over military and civil personnel engaged in comparable work."

41. The Agency approved Ms. Bellotte's leave requests and/or any changes to her schedule.

42. The Agency determined Ms. Bellotte's daily work assignments.

43. An Agency employee, the Functional Requirement Evaluator Designee ("FRED"), served as Ms. Bellotte's first-line supervisor at WHASC and BAMC.

44. The FRED monitored Ms. Bellotte's assignments and her hours.

45. The FRED also prepared monthly performance evaluations for Ms. Bellotte and other staff under his/her/their supervision. Following a review by the Agency Contract Officer Representative ("COR"), the Agency sent the evaluations to Bestica.

46. From August 2021 through March 2023, Dr. Darrick Beckman, DCOE Clinic Director,

served as the FRED and Ms. Bellotte's supervisor at WHASC.

47. From March 2023 through July 16, 2023, Dr. Faiz Taqi, DCOE Clinic Director, served as the FRED and Ms. Bellotte's supervisor at WHASC.

48. From July 17, 2023, through March 5, 2024, San Juana "Janie" Barbosa, RN, served as the FRED and Ms. Bellotte's supervisor at BAMC.

49. Ms. Bellotte did not have a Bestica direct supervisor. She communicated with the following Bestica employees throughout her employment:

   a. Tanya Alexander, Contracts Manager

   b. Lisa Martinez, Director of Healthcare

   c. Jessica Garcia Puig, Operations Manager

   d. Samantha Brookes, Human Resources

### Ms. Bellotte is a qualified individual with a disability.

50. Ms. Bellotte is allergic to artificial scents, including those found in aerosols, chemicals, colognes, perfumes, scented lotions, diffusers, *etc.*

51. Exposure to these non-naturally occurring allergens in the air and/or on skin, causes Ms. Bellotte to experience difficulty breathing, anaphylaxis, skin irritation, and swelling of her tongue and face.

52. Ms. Bellotte could successfully perform her job duties without repeated exposure to these allergens.

### The Agency failed to enforce the Scent-Free Workplace policy.

53. At all relevant times, the Agency had in place a "Scent-Free Workplace" policy, which stated: "Due to the health concerns arising from exposure to scented products, the 59 MDW [59th Medical Wing – Joint Base San Antonio] has adopted a scent-free environment. Scented

8

products can trigger reactions such as respiratory distress and headaches."

54. Accordingly, the Agency prohibited use of potpourri, industrial and household chemicals, room air freshers and deodorizers, scented oils, candles/wax, and incense sticks at WHASC, BAMC and other bases within the 59 MDW.

55. However, the Agency did not uniformly enforce this policy.

56. In 2021, Ms. Bellotte began having near-daily allergic reactions caused by workplace exposure to artificially scented products.

57. Due to the repeated exposure, Ms. Bellotte's symptoms began to increase in severity. In 2021, Ms. Bellotte's doctor prescribed her an EpiPen in case of anaphylaxis.

### *The Agency repeatedly exposed Ms. Bellotte to allergens at WHASC.*

58. At WHASC, Ms. Bellotte minimized her exposure to allergens as best she could. She had a private office, kept her office door shut, and ran an air purifier with a HEPA air filter when she was in the office. When she left her private office, she attempted to avoid exposure by wearing a mask, taking less-used hallways and paths, and requested badge access to less-traveled areas within the facility.

59. Despite these vigilant efforts, Ms. Bellotte frequently had to take one to two Benadryl each day due to exposure. On days when her symptoms were particularly severe, she either increased her Benadryl dose, which impacted her ability to drive, or she took paid time off ("PTO") or leave without pay ("LWOP") to recover and avoid further exacerbation.

60. As early as August 2021, Ms. Bellotte explicitly disclosed to Agency employees, including Dr. Beckman, Dr. Taqi, Major Rodney Ho, Clinic Officer in Charge ("OIC"), and SSgt Angelina Couch, Non-Commissioned Officer in Charge ("NCOIC"), that she was allergic to non-naturally occurring scents, and that exposure caused swelling of her tongue and eyes,

loss of her voice, and difficulty breathing.

61. On April 10, 2023, Ms. Bellotte emailed Dr. Taqi; SSgt Samantha Morrison, NCOIC; MSgt Evans Opoku, Allergy and Immunizations NCOIC; and Jessica Garcia-Puig, Bestica's Operations Manager, to advise that someone sprayed a scented product in or near the bathroom and that she was having an allergic reaction. Ms. Bellotte asked that they remind staff to comply with the Scent-Free Workplace Policy.

62. No one responded to Ms. Bellotte's April 10, 2023, email.

63. On May 4, 2023, Ms. Bellotte again emailed Dr. Taqi, SSgt Morrison, MSgt Opoku, and Ms. Garcia-Puig, advising that someone again sprayed a scented product in the hallway. Within seconds of the exposure, Ms. Bellotte's tongue began to swell, she could not speak, and her eyes became irritated. She wrote:

> Over the last year and a half I have submitted multiple emails, made requests verbally, submitted letters from allergists to Bestica and Leadership here as well as discussed this ongoing issue with staff of DCOE and Nutrition (in groups and individual) several times yet the scent free workplace policy and regards to my health are not being respected. I feel that this issues needs to be address [sic] at the next level as the issue continues to persist and is negatively impacting safety and productivity.

64. Dr. Taqi responded via email that he reminded employees of the Scent-Free Workplace policy but could not guarantee that employees would follow the policy.

65. Ms. Bellotte's colleagues responded in a rude manner when Ms. Bellotte asked them to abstain from wearing scented lotions or sprays.

66. For example, after Ms. Bellotte asked Audrey Sutton, DNP, not to wear fragrances because of her allergies, Nurse Sutton responded that "no one can tell [her] what to do."

67. Another colleague would press his body against the wall and slide down the hallway in an exaggerated and mocking fashion when he walked past Ms. Bellotte in the hallways,

10

ostensibly to "prevent" triggering her allergies with his scented lotion or cologne. Of course, that did not mitigate her exposure.

### *Ms. Bellotte formally requested a reasonable accommodation.*

68. On May 31, 2023, Ms. Bellotte contacted Bestica's Human Resources Manager, Samantha Brookes, to formally request a reasonable accommodation for her disability. Specifically, she requested to telework to avoid exposure to allergens. Ms. Bellotte included a note from her allergist to support her request.

69. Because she primarily met with patients and colleagues via virtual meeting platforms, Ms. Bellotte was able perform the essential duties of her position while working remotely.

70. Having not received a response, Ms. Bellotte followed up on June 27, 2023.

71. Ms. Brookes responded that Bestica was working with the Agency to determine if an accommodation was available. Ms. Brookes explained that because Ms. Bellotte worked at the Agency's site, the Agency had to process the telework request.

### *Upon DCOE's transfer to BAMC, the Agency continued to expose Ms. Bellotte to allergies and denied her request for a reasonable accommodation.*

72. In Spring 2023, the Agency planned to merge the WHASC Endocrine Department (where Ms. Bellotte was assigned to work), the BAMC Endocrine Department, and BAMC Diabetes Center into one department at BAMC, effective July 17, 2023.

73. In advance of the merger, Ms. Bellotte disclosed her medical condition to Dr. Sky Graybill, BAMC Endocrinology Department Chief, and specifically requested a private office to limit her exposure to artificial scents.

74. BAMC leaders Col Jeffery McLean, III, Chair of the Department of Medicine, MAJ Jonathan Metcalf, Administrative Officer; and Edwin Maldonado, Chief Nurse, denied Ms. Bellotte's request for a private office.

75. During her first two weeks at BAMC (July 17–28, 2023), the Agency did not even provide Ms. Bellotte with a proper workspace, computer, desk, or storage space. Each morning, Ms. Bellotte had to find a place to work.

76. Then, the Agency placed Ms. Bellotte in a shared office space with 11 other employees.

77. Not only could Ms. Bellotte not perform her job duties in the shared workspace because she could not speak privately with patients via her virtual meeting platform, but her officemates wore scented products in violation of the Scent-Free Workplace policy.

78. There were numerous unused offices at BAMC, but Nurse Barbosa and Dr. Graybill refused to allow Ms. Bellotte to use any of the empty offices.

79. Further, after the move to BAMC, Nurse Barbosa mandated that Ms. Bellotte attend an in-person staff meeting every morning at 8:00 a.m. Meeting attendees wore lotions, perfumes, and other scented products that triggered Ms. Bellotte's allergies.

80. Nurse Barbosa denied Ms. Bellotte's request to have someone attend the meeting on her behalf, as other employees (who did not have disabilities) had done, and/or to attend these staff meetings via phone or video.

81. Instead, Nurse Barbosa and Dr. Graybill directed Ms. Bellotte wear a mask, even though Ms. Bellotte explained that a mask will not prevent allergic reactions, and to sit in the break room across the hall from the meeting room or stand in the hallway outside the meeting room to observe the meeting.

82. Despite wearing a mask and standing in the break room or hallway, Ms. Bellotte's allergies were triggered each morning.

83. Additionally, standing in the break room or in the hallway humiliated and ostracized Ms. Bellotte. It was hard to hear what was being discussed and she could not participate without

raising her voice from outside the room.

84. Ms. Bellotte would have been able to hear and participate in the meeting via phone or video without risking an allergic reaction.

85. On one occasion, Nurse Barbosa even intentionally excluded Ms. Bellotte from the meeting. Nurse Barbosa looked directly at Ms. Bellotte, who was "participating" from the hallway, and then closed the door, shutting her out of the meeting.

### *BAMC failed to provide Ms. Bellotte with breastfeeding accommodations.*

86. Ms. Bellotte gave birth in December 2022 and took maternity leave through March 6, 2023.

87. When DCOE transferred to BAMC, Ms. Bellotte was still breastfeeding.

88. Because Ms. Bellotte did not have a private office at BAMC, she had to use the breastfeeding pod on the second floor in a different building from where her office was located.

89. To get to the other building, Ms. Bellotte had to walk through many hallways throughout the hospital, therefore exposing herself to allergens on her walk and triggering and/or exacerbating her symptoms.

90. In July and August 2023, Ms. Bellotte complained to both Dr. Graybill and Nurse Barbosa that this breastfeeding accommodation was not effective or reasonable because each walk to the breastfeeding pod exposed her to allergens and triggered and/or exacerbated her symptoms.

91. Nurse Barbosa suggested that Ms. Bellotte change her breastfeeding schedule to best serve the clinic.

92. In August 2023, Ms. Bellotte stopped breastfeeding due to the lack of proper accommodation.

### *Ms. Bellotte initiated a discrimination complaint.*

93. On or about August 11, 2023, Ms. Bellotte contacted the Agency's EEO Office regarding her

claims of disability discrimination and failure to provide a reasonable accommodation.

94. On August 15, 2023, an employee from the Agency's EEO office told Ms. Bellotte that she would look into her complaint, but that it was possible no one from the legal department would follow up with Ms. Bellotte about her complaint. Indeed, no one followed up with Ms. Bellotte after the call.

### *The Agency verbally denied Ms. Bellotte's reasonable accommodation request.*

95. On September 13, 2023, Lisa Martinez, the Agency's Director of Healthcare, verbally denied Ms. Bellotte's reasonable accommodation request to telework.

96. According to Tyrone Vermong, the Agency's COR, the Agency would not allow Ms. Bellotte to telework as a reasonable accommodation because the contract between the Agency and Bestica did not allow for teleworking.

97. Neither the Agency nor Bestica took any steps to modify the contract and/or to find an alternative effective reasonable accommodation for Ms. Bellotte.

98. Neither the Agency nor Bestica provided Ms. Bellotte with a written denial of her reasonable accommodation request.

99. On September 26, 2023, Ms. Bellotte followed up with Ernest Ytuarte, the Agency's EEO Manager, regarding her complaint of disability discrimination and failure to accommodate her disability.

100. On a Friday in October 2023, Nurse Barbosa sent Ms. Bellotte a text message, falsely accusing her of failing to attend the 8:00 a.m. meeting that morning or reporting to work.

101. Nurse Barbosa was not at work on that day, but Ms. Bellotte was at work that day and did attend the meeting.

102. Upon receipt of Nurse Barbosa's text message, Ms. Bellotte went to Staff Seargeant ("SSgt")

14

Santigo's office to confirm that she was at work.

103. The following Monday, Nurse Barbosa publicly scolded Ms. Bellotte for not coming to work the previous Friday.

104. Ms. Bellotte calmly explained that she was present at work, and that the Agency must have confused her with another employee who was absent on Friday.

105. SSgt Santiago, in Nurse Barbosa's presence, proceeded to claim that she took videos of Ms. Bellotte's four workspaces on Friday and that those videos would show that Ms. Bellotte did not show up that day.

106. Not only is it prohibited to take videos in the Agency's facilities, but also Ms. Bellotte met with SSgt Santiago in person, in the office, on the day in question.

107. On November 6, 2023, Ms. Martinez and Ms. Garcia-Puig chastised Ms. Bellotte for arriving a few minutes late one day. They instructed Ms. Bellotte to report to BAMC every day from 7:30 a.m. to 4:30 p.m., with one hour for lunch.

108. Ms. Martinez and Ms. Garcia-Puig further threatened that if she was even a minute late getting to work, the Agency would discipline her.

109. They informed Ms. Bellotte that they would deduct any time she was absent due to illness from her 10 days of leave.

110. They further stated that the Agency may discipline her for any absence that is not approved, even if due to illness.

111. Before she contacted the EEO office, no one said anything to Ms. Bellotte if she arrived a few minutes after her start time of 7:30 a.m.

112. Ms. Bellotte also noticed that the Agency did not chastise employees who did not have disabilities for arriving late.

113. During this meeting, Ms. Martinez was wearing perfume. As soon as she smelled it, Ms. Bellotte took a Benadryl to try to prevent or control her symptoms yet still developed a rash on her arms before the meeting was over.

*Ms. Bellotte required emergency medical treatment after a workplace exposure.*

114. On November 15, 2023, Ms. Bellotte was exposed to excessive fragrances while walking to the 8:00 a.m. mandatory meeting. Because the clinic was not open to patients at that point, the only people present were other employees.

115. Ms. Bellotte immediately started to have a severe allergic reaction. Within seconds, her tongue, neck, and face began to swell, and her eyes started to itch. She felt lightheaded and her hands and feet began to tingle.

116. Ms. Bellotte took two Benadryl and asked a nearby employee to contact Nurse Barbosa. Nurse Barbosa shouted down the hallway to ask if Ms. Bellotte was okay, to which she replied "no." Nurse Barbosa put her hands in the air, turned around, and left to go to the meeting.

117. Ms. Bellotte rushed to the Emergency Room/Acute Care in the building where she worked.

118. The doctors immediately provided Ms. Bellotte with three kinds of medication. She stayed in the emergency room for four or five hours until her symptoms subsided such that she could drive home safely.

119. The treating nurse in the Emergency Room instructed Ms. Bellotte to avoid further exposure, explaining that each subsequent exposure would cause the reactions to get progressively worse and delay recovery.

120. While Ms. Bellotte was receiving treatment in the Emergency Room, Nurse Barbosa texted Ms. Bellotte multiple times, demanding to know when Ms. Bellotte "left work."

121. Ms. Bellotte responded that she was in the emergency room due to an allergic reaction.

122. As Ms. Bellotte was about to leave the clinic, Nurse Barbosa accosted her, asked her inappropriate questions about her confidential medical information, such as the mediations the doctors prescribed her. Even after Ms. Bellotte asked her to leave, Nurse Barbosa continued to interrogate her.

123. Nurse Barbosa did not fill out a safety incident report that day or the following week, contrary to Agency policy requiring submission of the report within eight hours of the incident.

124. Ms. Bellotte was forced to take multiple days of unpaid leave to recover from her severe allergic reaction.

*Defendants continued to discriminate against Ms. Bellotte after she filed a formal complaint.*

125. On November 17, 2023, Ms. Bellotte filed her first formal complaint alleging unlawful disability discrimination, failure to accommodate, and retaliation with the Agency's EEO Office.

126. Upon returning to work after her emergency room visit, Ms. Bellotte provided Nurse Barbosa and the Agency with a second letter from her allergist explaining that her condition had worsened due to the repeated exposure to allergens.

127. Nurse Barbosa and other employees started calling Ms. Bellotte names, such as "smart ass," "difficult," "rude," and "troublemaker." They even mocked her for wearing a mask to try to limit direct exposure.

128. Despite Ms. Bellotte explicitly telling colleagues and leadership how severe her allergic reactions can be, including that she carried an EpiPen, employees continued to use and wear perfumes, colognes, and other artificial scents, sometimes purposefully spraying these fragrances into the hallway.

129. Ms. Bellotte was forced to avoid work events, including monthly birthdays, seminars,

trainings, and holiday parties, due to the continued and excessive fragrance-wearing and spraying of perfumes and scents in the hallways by employee and clinic leadership.

130. Ms. Bellotte used bathrooms outside of the clinic, planned her routes around the clinic to avoid exposure, and used alternative entrances and exits to avoid individual offices and areas with excessive allergens.

131. Nurse Barbosa frequently walked into Ms. Bellotte's office and stood close to her, despite wearing heavy perfume.

132. On one occasion, Ms. Bellotte asked Nurse Barbosa to leave her office because of her perfume.

133. Nurse Barbosa became angry and told Ms. Bellotte it would have been easier to remember to not come into her office "if [she] had a sign" on her door.

134. However, just a few weeks prior to this conversation, the Agency had chastised Ms. Bellotte for putting a sign on her door that stated: "Fragrance-Free Zone, please refrain from using scented products in this area." Nurse Barbosa was copied on the email communications instructing Ms. Bellotte to remove the sign.

135. In or around October 2023, Ms. Bellotte heard a contract employee, Judy, tell another employee to avoid Ms. Bellotte because she "causes problems" and "starts trouble" because of "all of the ADA stuff."

136. Ms. Bellotte immediately reported this comment to Nurse Barbosa and Chief Clutter, Endocrinology Department Chief. Neither responded.

137. In November or December 2023, Tanya Alexander, Bestica's Contract Manager, told Ms. Bellotte that "the Major" had complained to Bestica about a decline in the number of patients Ms. Bellotte was seeing in her program.

138. Ms. Bellotte explained that her program is designed so that the number of participating patients decreases as patients meet their goals and complete the program. Then, the program is filled with a new group of patients. The number of enrolled patients at that point was a sign of success. Further, Ms. Bellotte told Ms. Alexander that she saw *more* patients than the program required.

### Defendants forced Ms. Bellotte to resign by refusing to accommodate her disability and repeatedly exposing her to allergens.

139. In November 2023, after her emergency room visit, Ms. Bellotte's doctor diagnosed her with chronic allergies that had progressed from her previous acute condition. Her normal medications, precautions, and interventions no longer prevented allergic reactions.

140. In February 2024, Ms. Bellotte had a sinus infection that lasted more than a month. Her allergist explained that the severity of the infection was likely due to her constant exposure to allergens. Ms. Bellotte had difficulty breathing and talking, and her eyes watered and were swollen. Her doctor prescribed her prednisone, a steroid, to treat the infection.

141. Ms. Bellotte then learned she was pregnant.

142. Defendants' continued refusal to accommodate her disabilities exacerbated the severity and frequency of her allergic reactions, including more intense swelling, and difficult breathing. Her normal precautions, including Benadryl, other over the counter medications, and two prescription nasal sprays, failed to alleviate her symptoms.

143. Further, the constant reactions, continuous need to take Benadryl, and now the need to take a steroid to treat her symptoms placed her unborn child's life and health in danger.

144. Neither the Agency nor Bestica offered Ms. Bellotte an alternative reasonable accommodation or assignments.

145. On March 5, 2024, Ms. Bellotte was forced to resign due to the constant duress and extreme

negative impact Defendants' actions had on her mental and physical health.

146. A week later, Ms. Bellotte suffered a miscarriage.

## COUNT I

### Department of Defense, Defense Health Agency
### Rehab Act, § 501 (29 U.S.C. § 791 et. seq.) – Failure to Accommodate

147. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

148. Ms. Bellotte was an employee of the Department of Defense, Defense Health Agency.

149. Ms. Bellotte is a qualified individual with a disability.

150. The Agency was aware of Ms. Bellotte's disability.

151. The Agency denied Ms. Bellotte's requests for accommodation and failed to provide an effective alternative accommodation.

152. Providing an effective reasonable accommodation would not have imposed an undue burden or undue hardship on the Agency.

153. By and through its conduct, the Agency failed to accommodate Ms. Bellotte, in violation of the Rehabilitation Act.

154. The Agency's actions were intentional, reckless, and malicious.

155. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT II

### Department of Defense, Defense Health Agency
### Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Failure to Accommodate

156. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

157. The Department of Defense, Defense Health Agency receives federal funding.

158. Ms. Bellotte is a qualified individual with a disability.

159. The Agency was aware of Ms. Bellotte's disability.

160. The Agency denied Ms. Bellotte's requests for accommodation and failed to provide an effective alternative accommodation.

161. Providing an effective reasonable accommodation would not have imposed an undue burden or undue hardship on the Agency.

162. By and through its conduct, the Agency failed to accommodate Ms. Bellotte, in violation of the Rehabilitation Act.

163. The Agency's actions were intentional, reckless, and malicious.

164. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT III

### Department of Defense, Defense Health Agency
### Rehab Act, § 501(29 U.S.C. § 791 et. seq.) – Retaliatory Hostile Work Environment

165. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

166. Ms. Bellotte was an employee of the Department of Defense, Defense Health Agency.

167. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

168. Because Ms. Bellotte engaged in protected activity, the Agency subjected her to harassment and a hostile work environment when, *inter alia*, the Agency failed to enforce the Scent-Free Workplace Policy, intentionally exposed her to allergens, required her to attend a daily all-staff meeting, accused her of not showing up to work, chastised her for hanging a sign on her door, threatened her with discipline for arriving after 7:30 a.m., questioned the quality of her work, accosted her while in the emergency room, and mocked and belittled her disability.

169. By and through its conduct, the Agency subjected Ms. Bellotte to a hostile work environment based on reprisal, in violation of the Rehabilitation Act.

170. The Agency's actions were intentional, reckless, and malicious.

171. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT IV

### Department of Defense, Defense Health Agency
### Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) Retaliatory Hostile Work Environment Harassment

172. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

173. The Department of Defense, Defense Health Agency receives federal funding.

174. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

175. Because Ms. Bellotte engaged in protected activity, the Agency subjected her to harassment and a hostile work environment when, *inter alia*, the Agency failed to enforce the Scent-Free Workplace Policy, intentionally exposed her to allergens, required her to attend a daily all-staff meeting, accused her of not showing up to work, chastised her for hanging a sign on her door, threatened her with discipline for arriving after 7:30 a.m., questioned the quality of her work, accosted her while in the emergency room, and mocked and belittled her disability.

176. By and through its conduct, the Agency subjected Ms. Bellotte to a hostile work environment based on reprisal, in violation of the Rehabilitation Act.

177. The Agency's actions were intentional, reckless, and malicious.

178. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT V

### Department of Defense, Defense Health Agency
### Rehab Act § 501(29 U.S.C. § 791 et. seq.) – Hostile Work Environment Based on Disability

179. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

22

180. Ms. Bellotte was an employee of the Department of Defense, Defense Health Agency.

181. Ms. Bellotte is a qualified individual with a disability.

182. Because of Ms. Bellotte's disability, the Agency subjected her to harassment and a hostile work environment when, *inter alia*, the Agency failed to enforce the Scent-Free Workplace Policy, intentionally exposed her to allergens, required her to attend a daily all-staff meeting, accused her of not showing up to work, chastised her for hanging a sign on her door, threatened her with discipline for arriving after 7:30 a.m., questioned the quality of her work, accosted her while in the emergency room, and mocked and belittled her disability.

183. By and through its conduct, the Agency subjected Ms. Bellotte to a hostile work environment based on disability, in violation of the Rehabilitation Act.

184. The Agency's actions were intentional, reckless, and malicious.

185. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT VI

### *Department of Defense, Defense Health Agency*
### *Rehab Act § 504 (29 U.S.C. § 791 et. seq.) – Hostile Work Environment Based on Disability*

186. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

187. The Department of Defense, Defense Health Agency receives federal funding.

188. Ms. Bellotte is a qualified individual with a disability.

189. Because of Ms. Bellotte's disability, the Agency subjected her to harassment and a hostile work environment when, *inter alia*, the Agency failed to enforce the Scent-Free Workplace Policy, intentionally exposed her to allergens, required her to attend a daily all-staff meeting, accused her of not showing up to work, chastised her for hanging a sign on her door, threatened her with discipline for arriving after 7:30 a.m., questioned the quality of her work,

accosted her while in the emergency room, and mocked and belittled her disability.

190. By and through its conduct, the Agency subjected Ms. Bellotte to a hostile work environment based on disability, in violation of the Rehabilitation Act.

191. The Agency's actions were intentional, reckless, and malicious.

192. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT VII

*Department of Defense, Defense Health Agency*
*Rehab Act, § 501 (29 U.S.C. § 791 et. seq.) – Constructive Discharge Based on Reprisal*

193. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

194. Ms. Bellotte was an employee of the Department of Defense, Defense Health Agency.

195. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

196. Because Ms. Bellotte engaged in protected activity, the Agency harassed her, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

197. By and through its conduct, the Agency constructively discharged Ms. Bellotte based on reprisal, in violation of the Rehabilitation Act.

198. Defendant's actions were intentional, reckless, and malicious.

199. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT VIII

*Department of Defense, Defense Health Agency*
*Rehab Act, § 504(29 U.S.C. § 791 et. seq.) – Constructive Discharge Based on Reprisal*

200. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

201. The Department of Defense, Defense Health Agency receives federal funding.

202. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

203. Because Ms. Bellotte engaged in protected activity, the Agency harassed her, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

204. By and through its conduct, the Agency constructively discharged Ms. Bellotte based on reprisal, in violation of the Rehabilitation Act.

205. The Agency's actions were intentional, reckless, and malicious.

206. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT IX

*Department of Defense, Defense Health Agency*
*Rehab Act, § 501, (29 U.S.C. § 791 et. seq.) Constructive Discharge Based on Disability*

207. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

208. Ms. Bellotte was an employee of the Department of Defense, Defense Health Agency.

209. Ms. Bellotte is a qualified individual with a disability.

210. Because of Ms. Bellotte's disability, the Agency harassed her, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

211. By and through its conduct, the Agency constructively discharged Ms. Bellotte based on disability, in violation of the Rehabilitation Act.

212. The Agency's actions were intentional, reckless, and malicious.

213. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and

suffering, emotional distress, and mental anguish.

## COUNT X

### Department of Defense, Defense Health Agency
### Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Constructive Discharge Based on Disability

214. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

215. The Department of Defense, Defense Health Agency receives federal funding.

216. Ms. Bellotte is a qualified individual with a disability.

217. Because of Ms. Bellotte's disability, the Agency the Agency harassed her, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

218. By and through its conduct, the Agency constructively discharged Ms. Bellotte based on disability, in violation of the Rehabilitation Act.

219. The Agency's actions were intentional, reckless, and malicious.

220. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XI

### Bestica, Inc.
### Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Failure to Accommodate

221. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

222. Bestica receives federal funding.

223. Ms. Bellotte is a qualified individual with a disability.

224. Bestica was aware of Ms. Bellotte's disability.

225. Bestica denied Ms. Bellotte's requests for accommodation and failed to provide an effective alternative accommodation.

226. Providing an effective reasonable accommodation would not have imposed an undue burden

or undue hardship on Bestica.

227. By and through its conduct, Bestica failed to accommodate Ms. Bellotte, in violation of the Rehabilitation Act.

228. Bestica's actions were intentional, reckless, and malicious.

229. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XII

### *Bestica*

### *Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Retaliatory Hostile Work Environment*

230. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

231. The Defense Health Agency receives federal funding.

232. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

233. Because Ms. Bellotte engaged in protected activity, Bestica subjected her to harassment and a hostile work environment when, *inter alia*, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency.

234. By and through its conduct, Bestica subjected Ms. Bellotte to a hostile work environment based on reprisal, in violation of the Rehabilitation Act.

235. Bestica's actions were intentional, reckless, and malicious.

236. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XIII

### *Bestica, Inc.*

### *Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Hostile Work Environment Based on Disability*

237. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

238. Bestica receives federal funding.

239. Ms. Bellotte is a qualified individual with a disability.

240. Because of Ms. Bellotte's disability, Bestica subjected her to harassment and a hostile work environment when, *inter alia*, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency.

241. By and through its conduct, Bestica subjected Ms. Bellotte to a hostile work environment based on disability, in violation of the Rehabilitation Act.

242. Bestica's actions were intentional, reckless, and malicious.

243. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XIV

### *Bestica, Inc.*
### *Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Constructive Discharge Based on Reprisal*

244. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

245. Bestica receives federal funding.

246. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

247. Because Ms. Bellotte engaged in protected activity, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

248. By and through its conduct, Bestica constructively discharged Ms. Bellotte based on reprisal, in violation of the Rehabilitation Act.

249. Bestica's actions were intentional, reckless, and malicious.

250. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XV

### Bestica, Inc.

### Rehab Act, § 504 (29 U.S.C. § 791 et. seq.) – Constructive Discharge Based on Disability

251. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

252. Bestica receives federal funding.

253. Ms. Bellotte is a qualified individual with a disability.

254. Because of Ms. Bellotte's disability, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

255. By and through its conduct, Bestica subjected Ms. Bellotte to a hostile work environment based on disability, in violation of the Rehabilitation Act.

256. Bestica's actions were intentional, reckless, and malicious.

257. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XVI

### Bestica, Inc.

### ADA (42 U.S.C. § 12101 et. seq.) – Failure to Accommodate

258. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

259. Ms. Bellotte was an employee of Bestica.

260. Ms. Bellotte is a qualified individual with a disability.

261. Bestica was aware of Ms. Bellotte's disability.

262. Bestica denied Ms. Bellotte's requests for accommodation and failed to provide an effective

29

alternative accommodation.

263. Providing an effective reasonable accommodation would not have imposed an undue burden or undue hardship on Bestica.

264. By and through its conduct, Bestica failed to accommodate Ms. Bellotte, in violation of the Americans with Disabilities Act.

265. The Agency's actions were intentional, reckless, and malicious.

266. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XVII

### *Bestica, Inc.*
### *ADA (42 U.S.C. § 12101 et. seq.) – Retaliatory Hostile Work Environment*

267. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

268. Ms. Bellotte was an employee of Bestica.

269. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

270. Because Ms. Bellotte engaged in protected activity, Bestica subjected her to harassment and a hostile work environment when, *inter alia*, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency.

271. By and through its conduct, Bestica subjected Ms. Bellotte to a hostile work environment based on reprisal, in violation of the Americans with Disabilities Act.

272. The Agency's actions were intentional, reckless, and malicious.

273. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XVIII

***Bestica, Inc.***

***ADA (42 U.S.C. § 12101 et. seq.) – Hostile Work Environment Based on Disability***

274. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

275. Ms. Bellotte was an employee of Bestica.

276. Ms. Bellotte is a qualified individual with a disability.

277. Because of Ms. Bellotte's disability, Bestica subjected her to harassment and a hostile work environment when, *inter alia*, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency.

278. By and through its conduct, Bestica subjected Ms. Bellotte to a hostile work environment based on disability, in violation of the Americans with Disabilities Act.

279. Bestica's actions were intentional, reckless, and malicious.

280. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XIX

***Bestica, Inc.***

***ADA (42 U.S.C. § 12101 et. seq.) – Constructive Discharge Based on Reprisal***

281. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

282. Ms. Bellotte was an employee of Bestica.

283. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

284. Because Ms. Bellotte engaged in protected activity, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

285. By and through its conduct, Bestica constructively discharged Ms. Bellotte based on reprisal,

31

in violation of the Americans with Disabilities Act.

286. Bestica's actions were intentional, reckless, and malicious.

287. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XX

### Bestica, Inc.
### ADA (42 U.S.C. § 12101 et. seq.) – *Constructive Discharge Based on Disability*

288. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

289. Ms. Bellotte was an employee of Bestica.

290. Ms. Bellotte is a qualified individual with a disability.

291. Because of Ms. Bellotte's disability, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

292. By and through its conduct, Bestica constructively discharged Ms. Bellotte based on disability, in violation of the Americans with Disabilities Act.

293. Bestica's actions were intentional, reckless, and malicious.

294. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XXI

### Bestica, Inc.
### ADA (42 U.S.C. § 12101 et. seq.) – *Failure to Accommodate*

295. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

296. Bestica was Ms. Bellotte's employment agency.

297. Ms. Bellotte is a qualified individual with a disability.

32

298. Bestica was aware of Ms. Bellotte's disability.

299. Bestica denied Ms. Bellotte's requests for accommodation and failed to provide an effective alternative accommodation.

300. Providing an effective reasonable accommodation would not have imposed an undue burden or undue hardship on Bestica.

301. By and through its conduct, Bestica failed to accommodate Ms. Bellotte, in violation of the Americans with Disabilities Act.

302. The Agency's actions were intentional, reckless, and malicious.

303. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XXII

### *Bestica, Inc.*

### *ADA (42 U.S.C. § 12101 et. seq.) – Retaliatory Hostile Work Environment*

304. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

305. Bestica was Ms. Bellotte's employment agency.

306. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

307. Because Ms. Bellotte engaged in protected activity, Bestica subjected her to harassment and a hostile work environment when, *inter alia*, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency based on reprisal, in violation of the Americans with Disabilities Act.

308. The Agency's actions were intentional, reckless, and malicious.

309. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XXIII

### *Bestica, Inc.*

### *ADA (42 U.S.C. § 12101 et. seq.) – Hostile Work Environment Based on Disability*

310. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

311. Bestica was Ms. Bellotte's employment agency.

312. Ms. Bellotte is a qualified individual with a disability.

313. Because of Ms. Bellotte's disability, Bestica subjected her to harassment and a hostile work environment when, *inter alia*, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency based on disability, in violation of the Americans with Disabilities Act.

314. By and through its conduct, Bestica subjected Ms. Bellotte to a hostile work environment based on disability, in violation of the Americans with Disabilities Act.

315. Bestica's actions were intentional, reckless, and malicious.

316. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XXIV

### *Bestica, Inc.*

### *ADA (42 U.S.C. § 12101 et. seq.) – Constructive Discharge Based on Retaliation*

317. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

318. Bestica was Ms. Bellotte's employment agency.

319. Ms. Bellotte engaged in protected activity when she requested reasonable accommodation and filed a discrimination complaint.

320. Because Ms. Bellotte engaged in protected activity, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency based on disability, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made

her work environment so intolerable that she was compelled to resign.

321. By and through its conduct, Bestica constructively discharged Ms. Bellotte based on reprisal, in violation of the Americans with Disabilities Act.

322. Bestica's actions were intentional, reckless, and malicious.

323. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XXV

### Bestica, Inc.
### ADA (42 U.S.C. § 12101 et. seq.) – Constructive Discharge Based on Disability

324.    Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

325. Bestica was Ms. Bellotte's employment agency.

326. Ms. Bellotte is a qualified individual with a disability.

327. Because of Ms. Bellotte's disability, Bestica failed to exercise reasonable care to prevent and correct the harassment caused by the Agency based on disability, denied her accommodations, repeatedly and intentionally exposed her to allergens, and otherwise made her work environment so intolerable that she was compelled to resign.

328. By and through its conduct, Bestica constructively discharged Ms. Bellotte based on disability, in violation of the Americans with Disabilities Act.

329. Bestica's actions were intentional, reckless, and malicious.

330. As a result, Ms. Bellotte has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT XXVI

### Department of Defense, Defense Health Agency
### PWFA (42 U.S.C. § 2000gg et. seq.)

331. Ms. Bellotte adopts by reference each of the allegations in the paragraphs above.

332. Ms. Bellotte was an employee of the Department of Defense, Defense Health Agency.

333. The Agency failed to provide Ms. Bellotte with an effective or reasonable space to breastfeed.

334. By and through its actions, the Agency violated the PWFA.

335. The Agency's actions were intentional, willful, reckless, and/or malicious.

336. As a result, Ms. Bellotte has suffered damages, including lost compensation and benefits, pain and suffering, emotional distress, and mental anguish.

### JURY DEMAND

Ms. Bellotte demands a trial by jury on all Counts.

WHEREFORE, Ms. Bellotte respectfully requests that this Court enter judgment against Defendants on all Counts and award Ms. Bellotte lost wages and benefits, compensatory damages, attorney's fees, costs, pre- and post-judgment interest on the total amount of the award, the amount of tax on the total award, and any such other relief as is just and proper.


Dated: December 20, 2024                    Respectfully submitted,


                                            By: _/s/ Victoria Watson
                                            Victoria Watson [Bar No. 24110514]
                                            ALAN LESCHT AND ASSOCIATES, P.C.
                                            1825 K Street, NW, Suite 750
                                            Washington, D.C., 20006
                                            Tel: (202) 852-8482
                                            Fax: (202) 463-6067
                                            Victoria.watson@leschtlaw.com
                                            *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Defendants will be served via ECF email:

**Huiju Jeon**
Huiju.jeon@usdoj.gov
*Attorney for Defendant Department of Defense, Defense Health Agency*

**Bestica, Inc.**
3463 Magic Drive, #303
San Antonio, TX 78229
harvinder@bestica.com
jeffrey@bestica.com
tim.autry@bestica.com

/s/ Victoria Watson
Victoria Watson



MON · 23 DEC 12:00P
PRIORITY OVERNIGHT

78207
TX-US   SAT

709 4775 9396

XA SVZA

9396
12.27

RT 815
FZ

B  1
12:00

9396
12.30

B  1
12:00

9396
12.31

RT 815
FZ

Fed Ex.

REF: ASHLEY BELOTTE

TO   CLERK'S OFFICE
U.S. DISTRICT CLERK'S OFFICE
U.S. DISTRICT CLERK'S OFFICE
262 WEST NUEVA STREET, ROOM 1-400
SAN ANTONIO TX 78207
(210) 472-6550
DEPT:
INV:
PO:

ORIGIN ID:9ZSA
ALAN LESCHT & ASSOCIATES PC
1825 K STREET NW
SUITE 750
WASHINGTON DC 20006
UNITED STATES US
CAD: 104041818/INET4535

SHIP DATE: 20DEC24
ACTWGT: 1.00 LB
(202) 463-6036

BILL SENDER

RT 815
FZ
B  1
12:00
9396
12.21

RECEIVED
JAN 0 2 2025
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

815  1
12:00   B
9396
12.26

RT 0
FZ

Part # 156297-435 PROB EXP 10/25

Made from
recycled paperboard

RT 815
FZ
B  1
12:00
9396
12.26