UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ASHLEY BELLOTTE,**

    *Plaintiff*,

v.                                                                 Case No. 5:24-CV-0876-JKP

**LLOYD J. AUSTIN, III, SECRETARY
OF DEFENSE; AND BESTICA, INC.,**

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration a Partial Motion to Dismiss Amended Complaint (ECF No. 16) filed by Defendant Lloyd J. Austin, IIII, Secretary of the Department of Defense ("DoD"); Plaintiff's response (ECF No. 24) that has been docketed as a Motion in Opposition; and the DoD's reply (ECF No. 25). The reply substitutes Pete Hegseth as the current Secretary of the DoD. The DoD seeks to dismiss some claims for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and other claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Because there is no need to file a motion to oppose the DoD's motion, the Court denies Plaintiff's motion but will consider it as her response. With that response and the filed reply, the motion to dismiss is ripe for ruling. For reasons stated herein, the Court grants that motion in part.

### I. BACKGROUND

In July 2021, Defendant Bestica, Inc. hired Plaintiff to work as a contract preventionist/exercise physiologist for the Department of Defense, Defense Health Agency ("DHA"). Am. Compl. (ECF No. 15) ¶¶ 3, 34. Her employment was based on a contract between Bestica and the DHA. *Id.* ¶ 34. She worked on DHA sites until she resigned on March 5, 2024. *Id.* ¶¶ 38, 145.

During relevant times, Plaintiff was allergic to artificial scents, including those found in aerosols, chemicals, colognes, perfumes, scented lotions, and diffusers. *Id.* ¶ 50. Exposure to these

allergens in the air or on skin would cause her to experience health issues. *Id*. ¶ 51. As accommodations for her allergy, she requested the DHA to enforce the "Scent-Free Workplace" policy, which the DHA had in place. *Id*. ¶¶ 54, 61. The policy would prohibit the use of potpourri, industrial and household chemicals, room air fresheners and deodorizers, scented oils, candles, and incense sticks at workplaces. *Id*. ¶ 54.

In December 2022, Plaintiff had a baby and took maternity leave through March 6, 2023. *Id*. ¶ 86. Upon a transfer in July 2023, she had to use the breastfeeding pod in a different building because she did not have a private office. *Id*. ¶ 88. When she complained about this, it was suggested that she change her breastfeeding schedule. *Id*. ¶¶ 90–91. She stopped breastfeeding in August 2023. *Id*. ¶ 92. She learned she was pregnant again in or around February 2024. *Id*. ¶ 141. Because Plaintiff could not obtain an accommodation she was forced to resign on March 5, 2024. *Id*. ¶¶ 144–45. A week later she suffered a miscarriage. *Id*. ¶ 146.

In August 2024, Plaintiff commenced this litigation. *See* Compl. (ECF No. 1). On January 2, 2025, Plaintiff amended her complaint. *See* Am. Compl. As to the DoD, Plaintiff claims failure to accommodate, retaliatory hostile work environment, hostile work environment based on her disability, and constructive discharge based on reprisal and disability under §§ 501 and 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794. *See id*. ¶¶ 147–220. She also alleges a violation of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, arguing that the DoD failed to provide her with space for breastfeeding. *Id*. ¶¶ 331–36. She seeks monetary damages, attorney fees, interest, "and any such other relief as is just and proper." *Id*. at 36.

The DoD filed its motion to dismiss on January 10, 2025. It has moved to dismiss some claims under Fed. R. Civ. P. 12(b)(1) on jurisdictional grounds and some claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff opposes the motion. The DoD has filed a reply brief, and the motion is ready for ruling.

## II. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

Pursuant to Fed. R. Civ. P. 12(b)(1), the DoD seeks to dismiss some claims for lack of jurisdiction. More particularly, the DoD makes a two-pronged jurisdictional argument for dismissing Plaintiff's claims against the DoD under § 504 of the RA. First, it maintains that sovereign immunity protects it against monetary damages under that section. Next, it argues that Plaintiff lacks standing to assert her § 504 claims against it.

**A. General Jurisdictional Principles**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). By first considering a Rule 12(b)(1) motion, courts avoid "prematurely dismissing a case with prejudice" when it lacks jurisdiction. *Ramming*, 281 F.3d at 161. A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Courts have "the power to dismiss for lack of subject matter jurisdiction based on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir.

3

2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *accord Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When determining issues of subject matter jurisdiction, the courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* When faced with a factual jurisdictional attack, "a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

For factual attacks, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977)). On the other hand, a facial attack requires the courts to "consider the allegations of the complaint as true." *Id.* "Regardless of the nature of the attack, the plaintiff seeking a federal forum 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Chandler v. United States*, 338 F. Supp. 3d 592, 599 (N.D. Tex. 2018) (quoting *Ramming*, 281 F.3d at 161).

The DoD makes a facial jurisdictional attack. The Court thus considers Plaintiff's allegations as true for purposes of the instant motion to dismiss.

**B. Sovereign Immunity**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

The Supreme Court long ago found that § 504 of the RA does not waive sovereign immunity for federal agencies. *See Lane v. Pena*, 518 U.S. 187, 191-200 (1996). This means that Plaintiff's § 504 claims for monetary damages against the DoD "are shielded by sovereign immunity." *Chamberlain v. Chandler*, 344 F. App'x 911, 913 (5th Cir. 2009) (per curiam). Plaintiff has not carried her burden to show that jurisdiction exists over her § 504 claims for monetary damages. She has not shown that sovereign immunity has been waived. She instead relies on case law that arose in different circumstances and did not involve a federal agency, like the DoD. For these reasons, the Court finds that sovereign immunity precludes Plaintiff's § 504 claims for monetary damages.

**C. Standing**

Building on the sovereign immunity argument, the DoD argues that Plaintiff lacks standing for her § 504 claims. "Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980); *accord Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016). Constitutional standing, which is a plaintiff's personal stake in the outcome of the case, is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a

'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan*, 554 U.S. at 560–61).

The DoD argues that Plaintiff cannot satisfy the redressability prong because sovereign immunity precludes monetary damages, and Plaintiff has not identified any equitable remedy that she pursues. Plaintiff's complaint indeed identifies no equitable remedy sought. In response to the motion, Plaintiff likewise identifies no equitable remedy that a favorable decision would redress. She simply maintains erroneously that she can seek and obtain monetary damages under § 504. In the absence of any likelihood that Plaintiff's injury will be redressed by a favorable decision, Plaintiff lacks standing to pursue her § 504 claims in any respect.

### III. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), the DoD seeks to dismiss some claims for Plaintiff's failure to state a claim upon which relief can be granted. More particularly the DoD contends that the PWFA does not apply to the circumstances alleged in this case and that certain damages are not available for the claims alleged. The Court applies the well-established standards for stating a claim set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**A. Pregnant Workers Fairness Act ("PWFA")**

For purposes of this motion, the DoD (and the Court) assumes without deciding that Plaintiff was an employee within the meaning of the PWFA. To the extent her employment status is at issue, such factual matter is properly resolved at summary judgment, not on a motion to dismiss.

Because the PWFA took effect on June 27, 2023, only alleged conduct occurring after that date may provide a basis for a PWFA claim absent support for finding retroactive application warranted. *See Beddingfield v. United Parcel Serv., Inc.*, No. 23-CV-05896-EMC, 2024 WL 1521238, at *9 (N.D. Cal. Apr. 8, 2024). Plaintiff provides no basis to support retroactive

6

application of the PWFA.

After giving birth in December 2022, Plaintiff took maternity leave through March 6, 2023. *See* Am. Compl. ¶ 86. On May 31, 2023, she requested to telework as an accommodation for her allergen disability. *Id*. ¶ 68. Having received no response, she followed up on that request on June 27, 2023. *Id*. ¶ 70. At that time, she was told that it was being determined whether "an accommodation was available." *Id*. ¶ 71. As the PWFA had yet to be enacted, these events only concern her allergen disability and thus her claims under the RA.

Plaintiff worked exclusively at one site (Wilford Hall Ambulatory Surgical Center) through July 16, 2023. *Id*. ¶ 38. On July 17, 2023, she transferred to another site (Brook Army Medical Center ("BAMC")). *Id*. She transferred while she was still breastfeeding, which caused her to need "to use the breastfeeding pod on the second floor in a different building" from her non-private office. *Id*. ¶¶ 87–88. Her route to the pod required traversing numerous hospital hallways thereby exposing her to allergens that would trigger or exacerbate her symptoms. *Id*. ¶ 89. In July and August 2023, she complained that the breastfeeding accommodation was ineffective and unreasonable due the exposure to allergens. *Id*. ¶ 90. A nurse suggested that Plaintiff "change her breastfeeding schedule to best serve the clinic." *Id*. ¶ 91. Plaintiff stopped breastfeeding due to a lack of proper accommodation in August 2023. *Id*. ¶ 92.

With one exception not relevant at this point, the PWFA makes it "an unlawful employment practice for a covered entity" to fail to make "reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." *See* 42 U.S.C. § 2000gg-1. As defined by the statute,

> "known limitation" means physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions that the employee or employee's representative has communicated to the employer whether or not such condition meets the definition of disability specified in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102).

*Id*. § 2000gg(4). "As part of the Act, Congress tasked the EEOC with issuing regulations to carry out the PWFA and directed that such regulations 'shall provide examples of reasonable accommodations addressing known limitations related to pregnancy, childbirth, or related medical conditions.'" *Louisiana v. EEOC*, No. 2:24-CV-00629, 2025 WL 1462583, at *2 (W.D. La. May 21, 2025) (quoting 42 U.S.C. § 2000gg-3).

The DoD argues that the PWFA does not extend to Plaintiff's factual allegations. Relying on a federal case out of Colorado, the DoD argues that the statute applies to pregnant workers and does make any mention of lactation or breastfeeding. *See* Mot. at 4 (relying on *Spagnolia v. Charter Commc'ns, LLC*, No. 21-CV-01787-KLM, 2023 WL 3317781, at *11 (D. Colo. May 5, 2023), *aff'd*, No. 23-1190, 2024 WL 3271816 (10th Cir. July 2, 2024)). This Court finds *Spagnolia* has absolutely no persuasive value when considering the federally enacted PWFA in 2023. *Spagnolia* clearly and unambiguously addresses a Colorado statute enacted in 2016. *See* 2023 WL 3317781, at *10. *Spagnolia* even recognizes that other legislative enacted statutes expressly include breastfeeding. *Id*. at *11.

Plaintiff argues that lactation is a condition arising out of childbirth. Resp. at 7. This is supported by interpretive guidance and regulations issued by the EEOC. "There are some medical conditions where the relation to pregnancy will be readily apparent. They can include, but are not limited to, lactation (including breastfeeding and pumping) . . . ." 89 Fed. Reg. 29,191 ¶ 18 (also found at 2024 WL 1679177). An issued regulation lists "lactation and conditions related to lactation" as part of the "non-exhaustive" list of "Pregnancy, childbirth, or related medical conditions." 29 C.F.R. § 1636.3(b). The regulation also has a specific provision addressing "[r]easonable accommodation related to lactation" and "pumping." *See id*. § 1636.3(i)(4).

Despite the DoD's arguments that the PWFA does not apply to breastfeeding, the unambiguous statutory text supports applying it to conditions such as lactation and the accompanying

8

pumping and breastfeeding that naturally accompany lactation. To the extent the statute itself leaves any ambiguity, the Court finds the implemented regulations and EEOC guidance crystal clear. Unless binding authority dictates otherwise, this Court declines to simply find the PWFA inapplicable to breastfeeding.

In reply, the DoD asserts that Plaintiff has not rebutted the fact that she has failed to plead facts showing that the PWFA applies to its failure to accommodate the request for breastfeeding. Reply at 3. It further argues that Plaintiff neither alleges that breastfeeding constitutes a related medical condition under the PWFA or that breastfeeding is a limitation related to pregnancy and childbirth. *Id*. These arguments, however, ask for more than Rule 8(a) requires for pleading a claim. Determining plausibility is a "context-specific task," that courts perform in light of their "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Commonsense provides the perceived missing allegations.

The DoD also asserts that Plaintiff conflates her PWFA claim with her RA claims because the only alleged complaint regarding a failure to accommodate her breastfeeding related to the need to walk to the breastfeeding pod and the resulting exposure to allergens. Reply at 4. This assertion carries more force. Plaintiff clearly alleges that she was provided a breastfeeding pod. And other than her complaint about exposure to allergens, Plaintiff makes no specific allegation as to how the provided breastfeeding pod failed to accommodate her breastfeeding need.

It thus appears that Plaintiff does conflate her claims to some extent. Her primary claim is undoubtedly under § 501 of the RA given the dismissal of her § 504 claims. But she has a distinct claim under the PWFA related to her breastfeeding. Even though her allegations are sparse on this claim, she did specifically complain about the space provided for breastfeeding. While the complaint clearly related to the exposure to allergens, which is specific to her RA claims, she does also allege that the provided room was "on the second floor in a different building from where her

9

office was located." *See* Am. Compl. ¶ 88. And the distance she needed to reach the provided room required traversing "through many hallways throughout the hospital." *Id.* ¶ 89. She also alleges that she complained about the "breastfeeding accommodation" requiring a walk that exposed her to allergens. *Id.* ¶ 90. While the allegations could be clearer as to the specifics of Plaintiff's complaint about the breastfeeding accommodation, her allegations are enough to allege a plausible failure to accommodate based on the distance of the provided room from Plaintiff's usual work area. *See* 29 C.F.R. § 1636.3(i)(4)(ii) (identifying one accommodation "related to pumping" as "ensuring that the area for lactation is in reasonable proximity to the employee's usual work area"). Greater specificity can be garnered through discovery and resolved at summary judgment.

The DoD argues that Plaintiff's allegations are not sufficient to allege that she complied with her responsibility of informing it of her need for accommodation. Reply at 4. The Fifth Circuit "has recognized that where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (citation and internal quotation marks omitted). At this stage of the litigation, the Court may reasonably infer that Plaintiff's need for a breastfeeding area that was close to her normal work area would have been open, obvious, and apparent to the DoD. Thus, to proceed with her PWFA claim, Plaintiff need not plead more than she has already pled.

To the extent the DoD has other reasons to dismiss the PWFA claim, it has not raised them in its briefing. The Court thus denies the motion as it relates to dismissing the PWFA claim.

## B. Available Damages

Pursuant to Fed. R. Civ. P. 12(b)(6), The DoD seeks to dismiss certain damages claimed by Plaintiff. However, Rule 12(b)(6) concerns dismissing claims, not remedies stemming from a

properly alleged claim. This Court previously addressed this matter in a prior case:

> Rule 12(b)(6) does not appear to contemplate motions to dismiss specific types of relief. It instead provides a means for litigants to move for dismissal of an action or claims for the "failure to state a claim upon which relief can be granted." The relief sought can certainly bear on whether a party has stated a claim – in that, if all relief sought, is unavailable for a specific claim, then that claim may fail under Rule 12(b)(6). But, in general, when a party requests alternate relief on the same underlying claim, the unavailability of one type of relief should not garner a motion to dismiss under Rule 12(b)(6). And such a motion could face a summary denial.

*Morrison v. Marathon Petroleum Co., LP*, No. SA-20-CV-0480-JKP-RBF, 2021 WL 1739243, at *4 (W.D. Tex. May 3, 2021). This Court further noted that it "sees no harm in allowing alternative relief to proceed beyond a motion to dismiss," it recognized its discretionary authority to dismiss requested relief when it adds nothing to the case. *Id*.

The Court, furthermore, recognizes that the Fifth Circuit has tacitly approved the use of Rule 12(c) "to dispose of insufficiently pled claims for damages." *Ozon v. Bank of Am., N.A.*, No. DR-15-CV-057-AM-VRG, 2015 WL 11545020, at *5 (W.D. Tex. Nov. 9, 2015) (recommendation of Mag. J.) (citing *McBride v. Estis Well Serv., LLC*, 768 F.3d 382, 391 (5th Cir. 2014) (en banc)). *McBride* addressed a Rule 12(c) dismissal of punitive damages not recoverable under the claim asserted (Jones Act). 768 F.3d at 384. *Ozon* addressed exemplary damages that were not recoverable once certain claims were dismissed from the case under Rule 12(b)(6). *See* 2015 WL 11545020, at *6.

This Court agrees that when an underlying claim is dismissed, courts properly dismiss accompanying requests for damages that are no longer available. Similarly, a request for punitive or exemplary damages is properly dismissed when no asserted claim permits recovery of such damages. Here, the DoD asserts that damages related to mental anguish and emotional distress are not available under the RA. And the Supreme Court agrees. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). But *Cummings* only addressed § 504 of the RA. *See id*. at 217. The analysis of *Cummings*, *see id*. at 220-22, differs from analyzing § 501 claims of the RA, *see*

11

*Lane v. Pena*, 518 U.S. 187, 193-94 (1996). Plaintiff's § 501 claims permit damages related to mental anguish and emotional distress. *See Burns v. Nielsen*, 506 F. Supp. 3d 448, 481 (W.D. Tex. 2020).

Further, as discussed earlier, Plaintiff has stated a plausible claim under the PWFA. Given that claim, the Court declines to dismiss damages for mental anguish or emotional distress as the DoD has not addressed whether such damages are unavailable for a PWFA claim. The Court cannot find that the requested relief adds nothing to this case even if the Court were to ignore Plaintiff's § 501 claims under the RA.

## IV. CONCLUSION

For the foregoing reasons the Court **GRANTS IN PART AND DENIES IN PART** the Partial Motion to Dismiss Amended Complaint (ECF No. 16) filed by Defendant Lloyd J. Austin, IIII, Secretary of the Department of Defense. Because Plaintiff has not shown that jurisdiction exists over her § 504 claims under the RA the Court **DISMISSES** such claims without prejudice for lack of jurisdiction. It otherwise denies the motion to dismiss. It also **DENIES** the Motion in Opposition (ECF No. 24) while considering the filing as Plaintiff's response to the motion to dismiss. Furthermore, the Court **DIRECTS the Clerk of Court to substitute Pete Hegseth for Defendant Austin pursuant to Fed. R. Civ. P. 25(d).**

**SIGNED** this 28th day of July 2025.

*[signature: Jason Pulliam]*
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**